```
                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF TEXAS
                       SAN ANTONIO DIVISION
```

| | |
|---|---|
| CARLOS TREVINO,<br>TDCJ No. 999235,<br><br>      Petitioner,<br><br>V.<br><br>RICK THALER, Director,<br>Texas Department of Criminal<br>Justice, Correctional<br>Institutions Division,<br><br>      Respondent. | §<br>§<br>§<br>§<br>§<br>§    CIVIL NO. SA-01-CA-306-XR<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**ORDER DENYING PETITIONER'S MOTIONS TO ALTER OR AMEND JUDGMENT**

    The matters before the Court are (1) petitioner's motion to alter or amend judgment, filed January 19, 2010, docket entry no. 89, and (2) petitioner's supplement thereto, filed, January 20, 2010, docket entry no. 91.

    In a detailed Memorandum Opinion and Order issued December 21, 2009, this Court denied petitioner's amended petition for federal habeas corpus relief but granted petitioner a Certificate of Appealability on portions of three claims. *Trevino v. Thaler*, ___ F.Supp.2d ___, 2009 WL 5196749 (W.D. Tex. December 21, 2009).

<u>The Issues Properly Before this Court</u>

    Petitioner's motion to alter or amend judgment includes a series of complaints about the manner in which this Court addressed, or failed to specifically address, several new claims, as well, as a number of new factual and legal arguments petitioner

raised for the first time in his response to respondent's answer, filed originally September 14, 2009, docket entry no. 86.

Petitioner's response to respondent's answer is not the appropriate vehicle for presenting this Court with new claims, as well as wholly novel factual and legal theories underlying the claims contained in petitioner's amended petition, which have never heretofore been presented to any state court. *See Wood v. Allen*, ___ U.S. ___, ___ S.Ct. ___, ___ L.Ed.2d ___, 2010 WL 173369, *8 (January 20, 2010)(holding the fact a petitioner discussed an issue in the text of his petition for certiorari did not properly bring that issue before the Supreme Court); *McDaniel v. Brown*, ___ U.S. ___, ___ S.Ct. ___, ___ L.Ed.2d ___, 2010 WL 58361, *8 (January 11, 2010)(holding a federal habeas petitioner forfeited a claim which he presented for the first time in his brief on the merits in the Supreme Court).

Insofar as petitioner believes he is free to continue to amend his pleadings herein to add new claims, as well as new legal and factual theories supporting his existing claims, in his response to respondent's answer, petitioner is in error. Under the provisions of Rule 15(a)(2), Federal Rules of Civil Procedure, applicable prior to December 1, 2009, petitioner did not possess carte blanche to amend or supplement his pleadings herein subsequent to the filing of respondent's answer. Petitioner never sought, nor was granted, leave to amend his pleadings herein subsequent to the date

respondent filed his answer to petitioner's amended petition. Nor has petitioner presented this Court with written consent from respondent authorizing petitioner to amend his pleadings herein following the filing of respondent's answer on June 22, 2009, docket entry no. 82. Under such circumstances, it is unnecessary for this Court to specifically address each and every new claim or new legal or factual argument which petitioner presented for the first time in petitioner's response to respondent's answer. *See United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998)(holding a District Court properly refused to consider affidavits presented for the first time in a Section 2255 movant's response to the Government's Answer); *United States v. Anderson*, 951 F.2d 626, 630 (5th Cir. 1992)(holding a Section 2255 movant could not amend his pleadings to include new claims after the Government had filed its responsive pleading). "Rule 15(a) permits a party to amend their pleadings after a responsive pleading has been served 'only by leave of court or by written consent of the adverse party.'" *United States v. Cervantes*, 132 F.3d at 1111.

Most of the new legal and factual arguments petitioner presented for the first time in his response to respondent's answer asserted new variations on petitioner's multi-faceted ineffective assistance claims. This Court did not specifically address those new claims and new legal and factual theories in its Memorandum Opinion and Order because (1) under Rule 15(a), petitioner's new

3

claims were not properly before this Court and (2) petitioner's new legal and factual arguments underlying his existing ineffective assistance claims herein focused primarily on the deficient performance prong of the applicable *Strickland* analysis while this Court chose to focus its analysis primarily on the prejudice prong of *Strickland* in conducting its analysis of those claims.

<u>Procedural Default & No "Prejudice" on IAC Claims</u>

For the reasons set forth at length in Section IV.D.2. of this Court's Memorandum Opinion and Order, petitioner procedurally defaulted on his complaints about his trial counsel's failure to adequately investigate, develop and present mitigating evidence regarding petitioner's background by failing to include those complaints (including the new factual theories petitioner urged for the first time in petitioner's response to respondent's answer herein) in petitioner's first state habeas corpus application.

Alternatively, for the reasons set forth at length in Section IV.D.3., this Court independently concluded petitioner's complaints about his trial counsel's failure to adequately investigate petitioner's background and present mitigating evidence during the punishment phase of petitioner's trial do not satisfy the prejudice prong of *Strickland*.

For the foregoing reasons, it was unnecessary for this Court to specifically address the ABA's 1989 Guidelines for the

4

performance of trial counsel in death penalty cases (which guidelines do not supplant the dual prongs of *Strickland*).

The Alleged Error in the Factual Summary of Petitioner's Offense

Petitioner attacks this Court's Memorandum Opinion and Order by charging this Court with misrepresenting the facts of petitioner's case. More specifically, petitioner argues that this Court's recitation of the operative facts erroneously suggested that prosecution witness Juan Gonzales, the petitioner's teenage cousin, testified *during the guilt-innocence phase of trial* that petitioner told their fellow co-defendant Santos Cervantes "I learned how to kill in prison" and "I learned how to use a knife in prison." Petitioner is correct that Gonzales' testimony on this subject *in front of the jury* during the guilt-innocence phase of petitioner's capital murder trial was limited to recounting petitioner's statement "I learned how to kill."[1]

However, this Court's recitation of the operative facts regarding petitioner's offense (contained in Section I.A. of this court's Memorandum Opinion and Order) was culled from not merely the portion of the guilt-innocence phase of petitioner's trial conducted in the jury's presence, but also from the petitioner's entire trial, including the punishment phase of same, as well as the evidence introduced during the evidentiary hearing held in petitioner's first state habeas corpus proceeding. During a

---

[1] S.F. Trial, Volume XIX, testimony of Juan Gonzales, at p. 5.

hearing held outside the presence of the jury during the guilt-innocence phase of petitioner's capital murder trial, Juan Gonzales advised the state trial court he had heard the petitioner respond to a comment by Cervantes with the statement "I learned how to kill people in prison."[2] Moreover, during the punishment phase of petitioner's trial, Gonzales again took the stand and testified *in front of the jury* that he had heard petitioner state to Cervantes "I learned how to kill in prison" and "I learned how to use a knife in prison."[3] This Court will add these latter two record citations to footnote 7 contained in its Memorandum Opinion and Order. No further clarification of the Opinion is necessary, however.

Petitioner's Attack on the Credibility of Juan Gonzales

Petitioner exerts considerable effort attempting to collaterally attack the credibility of petitioner's own cousin, Juan Gonzales, who testified during petitioner's trial concerning the horrific scenes Gonzales witnessed, including Linda Salinas' brutal sexual assault led by Santos Cervantes and assisted by petitioner (whom Gonzales witnessed holding Salinas down while others sexually assaulted her). Petitioner's latest pleading fails to note, however, that petitioner has never challenged the factual accuracy of Gonzales' trial testimony, either through petitioner's

---

[2] S.F. Trial, Volume XVIII, testimony of Juan Gonzales, at p. 144.

[3] S.F. Trial, Volume XXIII, testimony of Juan Gonzales, at p. 84.

own testimony or by presenting any other alleged eyewitness to the same events who contradicted Gonzales' account.

Petitioner chose not to testify during the guilt-innocence phase of his trial. Petitioner chose not to testify during the punishment phase of his trial. Petitioner chose not to testify during any other post-trial proceeding in his case, including the evidentiary hearing held in petitioner's first state habeas corpus proceeding. Nor has petitioner ever presented this Court, or any other court, with any other witness claiming to have personal knowledge of what happened on the night Linda Salinas was sexually assaulted and fatally stabbed. Thus, petitioner has never refuted Juan Gonzales' trial testimony regarding what Gonzales saw or heard on the night of Linda Salinas' murder.

Petitioner's contention that his plea of not guilty at the commencement of his trial constitutes an on-going, legally valid, rebuttal to Gonzales' trial testimony is inane. The presumption of innocence to which petitioner was once entitled disappeared the instant his jury returned a guilty verdict during petitioner's capital murder trial. *See Delo v. Lashley*, 507 U.S. 272, 278, 113 S.Ct. 1222, 1226, 122 L.Ed.2d 620 (1993)(once a defendant has been convicted fairly in the guilt phase of a capital trial, the presumption of innocence disappears); *Miller v. Estelle*, 677 F.2d 1080, 1085 (5th Cir. 1982)(holding the same), *cert. denied*, 459 U.S. 1072 (1982). Once petitioner completed his direct appeal

7

process, including exhaustion of his opportunity to seek direct review of his conviction and sentence from the United States Supreme Court through a petition for writ of certiorari, a presumption of finality and legality attached to his conviction. *Brecht v. Abrahamson*, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719, 123 L.Ed.2d 353 (1993); *Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S.Ct. 3383, 3392, 77 L.Ed.2d 1090 (1983). Federal habeas corpus proceedings are not forums in which to re-litigate state trials. *Brecht v. Abrahamson*, 507 U.S. at 633, 113 S.Ct. at 1719; *Barefoot v. Estelle*, 463 U.S. at 887, 103 S.Ct. at 3392.

During petitioner's first state habeas corpus proceeding, petitioner had the opportunity to question both of his trial counsel concerning their strategy during petitioner's trial. However, petitioner made no effort to explore with either of his trial counsel why said counsel chose not to attack Gonzales' credibility by cross-examining Gonzales regarding alleged discrepancies between Gonzales' trial testimony and Gonzales' prior written statements to police and Gonzales' grand jury testimony. Instead, petitioner elicited from one of his trial counsel testimony showing that petitioner's defense team had contacted Juan Gonzales prior to trial and knew what testimony Gonzales was prepared to give at petitioner's trial.[4] Petitioner did not even

---

[4] S.F. State Habeas Hearing, testimony of Mario Trevino, at p. 26.

bother to call his other trial co-counsel to testify during that same state habeas corpus hearing. Petitioner does not allege any facts showing the alleged discrepancies between Gonzales' trial testimony and Gonzales' previous statements and grand jury testimony were unavailable to a diligent investigator at the time of petitioner's first state habeas corpus proceeding.

Petitioner alleges in conclusory terms that Gonzales was coerced into testifying against petitioner at trial. However, petitioner has offered this Court no affidavit, deposition testimony, or any other admissible evidence showing either (1) Gonzales has ever claimed he was coerced into testifying in the manner he did during petitioner's trial or (2) there was any factual inaccuracy in Gonzales' trial testimony. Petitioner failed to call Gonzales to testify during the evidentiary hearing in petitioner's first state habeas corpus proceeding and has presented this court with no other evidence showing any coercion was actually applied to induce Gonzales' trial testimony. Moreover, petitioner's amended federal habeas corpus petition does not include a attack upon the sufficiency of the evidence supporting petitioner's conviction, does not allege Gonzales gave perjured testimony during petitioner's trial, and does not offer any other challenge to the credibility of Gonzales' trial testimony supported by admissible evidence. Under such circumstances, petitioner's procedurally defaulted rant about Gonzales' purported lack of credibility does not warrant federal habeas corpus relief.

The Purportedly Missing DNA Evidence

Petitioner argued for the first time in his response to respondent's answer that Salinas' underwear did not contain any blood sample which could be matched to petitioner. Aside from the fact petitioner never presented this new claim to any court until he filed his response to respondent's answer herein, petitioner's argument does not warrant any relief from this Court. Petitioner has not alleged any specific facts establishing the mixed blood sample found on Salinas' underwear in 1997 (which an expert testified during petitioner's trial included a portion that could have come from petitioner)[5] was placed there by law enforcement officers after petitioner's arrest. Instead, petitioner refers to a cryptic statement on an unverified, unsigned, unauthenticated photocopy of a hearsay document purportedly establishing that, as of December, 2008, Salinas' white underwear did not contain any blood which could be detected.[6] Petitioner offers this Court no specific facts, much less any evidence, showing that, after the DNA testing conducted on Salinas' white underwear in 1997, there was any detectible amount of blood remaining on that item of clothing which could have been subjected to further analysis. Likewise,

---

[5] S.F. Trial, Volume XIX, testimony of Lonnie Ginsberg, at pp. 127-34; Volume XXII, testimony of Lonnie Ginsberg, at pp. 33-35, 38, 44, 46, 47, 54.

[6] See Exhibit 10 attached at pp. 36-38 to Petitioner's Supplement for Motion to Alter or Amend Judgment, filed January 20, 2010, docket entry no. 91.

petitioner alleges no facts, much less presents any evidence, establishing the testimony of the prosecution's DNA expert during petitioner's trial was in any manner factually inaccurate. Thus, the fact there was no mixed blood stain remaining to be tested on Salinas' underwear more than a decade after petitioner's trial does not, standing alone, establish any basis for federal habeas corpus relief.

In reality, petitioner's presence at the scene of the crime was never seriously contested at any stage of petitioner's capital murder trial. Petitioner admitted to his state court appointed health expert that he was present at the location where Salinas was sexually assaulted and murdered.[7] In addition to the unchallenged trial testimony of Juan Gonzales (which petitioner has never refuted directly or otherwise in any forum) which identified petitioner as one of the persons who participated in the sexual assault on Linda Salinas (by holding her down while others assaulted her), Jay Mata testified (1) the petitioner left a party at Mata's residence on a beer run on the night in question in the company of several individuals, including Juan Gonzales and Santos Cervantes, and (2) petitioner and Cervantes returned to Mata's

---

[7] *See* Report of Dr. Rebecca Dyer, dated April 16, 2004, found at pages 439-56 of the Transcript of pleadings, motions, and other documents filed in petitioner's *second* state habeas corpus proceeding, i.e., AP-48,153-02, Volume 3 of 3 (henceforth "Dyer Report"), at pp. 441-42.

residence several hours later.[8] Mata also testified he saw Cervantes and petitioner in his backyard with a black cloth bag which was later set on fire.[9] In a search of the location where Mata had seen petitioner and Cervantes burn the bag, police recovered the burned remnants of a pair of blue underwear which Salinas' mother identified as belonging to her daughter.[10] A clerk

---

[8] S.F. Trial, Volume XVI, testimony of Jay Mata, at pp. 153-60.

[9] *Id.*, at pp. 159-64, 170-71, 174, 177, 187, 197-99, 202-03, 207, 210.

[10] S.F. Trial, Volume XVI, testimony of Barry Gresham, at pp. 225-27; Volume XVII, testimony of Barry Gresham, at pp. 13, 33; Volume XVIII, testimony of Dawn Salinas, at p. 60.
  Linda Salinas' teenage friend Stephanie Saldivar testified at the guilt-innocence phase of trial that (1) Linda called her the evening in question and arranged to meet Stephanie and her brother at a Whataburger, (2) Saldivar could hear Linda talking with someone else during their telephone conversation, (3) Linda carried a back pack, (4) Stephanie and her brother drove to the Whataburger in question and waited for 15-20 minutes but Linda never arrived there, and (5) the *white* underwear and blue shorts recovered at the crime scene (State Exhibit nos. 46 and 47) belonged to Linda. S.F. Trial, Volume XVI, testimony of Stephanie Saldivar, at pp. 82-90.
  Jay Mata testified that, after they returned to the party at his residence, (1) he saw petitioner and Santos Cervantes with a black backpack, (2) he later saw petitioner and Cervantes standing near the location where the back pack was burning, (3) when Mata asked petitioner what they were doing, petitioner said it was nothing, and (4) the following day, Mata observed the burned remnants of several items at the same spot where the back pack had been burned. S.F. Trial, Volume XVI, testimony of Jay Mata, at pp. 159-64, 174-75, 177, 187, 197-203, 207.
  Police recovered a charred pair of *light blue* underwear (contained in State Exhibit no. 57) from the location in the backyard of the Mata residence where Mata had seen Cervantes and the petitioner and the burning back pack. S.F. Trial, Volume XVI, testimony of Barry Gresham, at p. 226; Volume XVII, testimony of James McCourt, at pp. 175-76; Volume XVII, testimony of Richard Roberts, at pp. 181-84.
  Linda Salinas' mother identified both the white underwear

12

at a convenience store near Mata's residence testified he observed Linda Salinas, with a bag over her shoulder, get into a vehicle with Cervantes and several other men on the evening of her death.[11] Petitioner presented his trial court with no alibi testimony. Petitioner has never presented any court with any evidence suggesting he was not present at the crime scene when Salinas was sexually assaulted and fatally stabbed. Petitioner has alleged no specific facts, much less furnished this Court with any evidence, establishing the absence of blood on Salinas' underwear in 2008 was the result of anything other than either (1) the normal degradation of organic material over time or (2) the complete consumption of all blood-stained material on Salinas' underwear during the 1997 DNA testing process. Under such circumstances, petitioner's cryptic complaint about the absence of a blood stain on Salinas' underwear does not warrant federal habeas relief.

<u>Petitioner's Effort to Extend *Atkins* to Fetal Alcohol Syndrome</u>

Petitioner spends a substantial portion of his motion to alter or amend presenting a series of public policy arguments in favor of extending the benefits of the Supreme Court's holding in *Atkins v. Virginia* to all criminal defendants who suffer from fetal alcohol

---

recovered at the crime scene and the charred pair of blue underwear recovered from Jay Mata's backyard as belonging to her daughter. S.F. Trial, Volume XVIII, testimony of Dawn Salinas, at p. 60.

[11] S.F. Trial, Volume XVI, testimony of Daniel Luna, at pp. 20-47.

syndrome. Nowhere in his motion does petitioner address this Court's legal conclusion that such an extension is foreclosed in the context of this federal habeas corpus proceeding by the Supreme Court's holding in *Teague v. Lane*.

The Evidence of Petitioner's Propensity for Future Dangerousness

In the Memorandum Opinion and Order issued December 21, 2009, this Court repeatedly noted petitioner's consistent refusal to accept responsibility for his role in Salinas' murder and to express even a scintilla of remorse for his role in her death. This Court considered that factor not merely relevant but compelling when evaluating the prejudice prong of *Strickland* in conjunction with petitioner's ineffective assistance claims, as well as the materiality prong of petitioner's *Brady* claim. Petitioner could have presented his first state habeas court with a plethora of potentially mitigating evidence, including evidence showing petitioner suffered from fetal alcohol syndrome, and argued his trial counsel should have presented same during the punishment phase of petitioner's trial.

Petitioner did raise several complaints regarding his trial counsel's punishment-phase performance during petitioner's first state habeas corpus proceeding. However, petitioner did not challenge his trial counsel's failure to investigate petitioner's background and present mitigating evidence until petitioner's second state habeas corpus proceeding, at which time, those claims

14

were summarily dismissed by the Texas Court of Criminal Appeals. As was explained in this Court's Memorandum Opinion and Order of December 21, 2009, this Court concluded petitioner has procedurally defaulted on this aspect of his ineffective assistance claims herein. This Court considers petitioner's lack of demonstrated remorse to be relevant to the issue of whether petitioner can satisfy the fundamental miscarriage of justice exception to the procedural default doctrine. For the foregoing reasons, petitioner's "lack of remorse" is far from the "non-issue" petitioner summarily proclaims it to be.

Petitioner correctly argues that the petitioner. Santos Cervantes, Brian Apolinar, and Seanido Rey all had the means, motive, and opportunity to fatally stab Linda Salinas. However, the evidence before petitioner's jury established that only one of them bragged about having learned how to use a knife – and how to kill – as they drove away from the crime scene. Petitioner has failed to present this Court with any evidence showing Juan Gonzales' trial testimony was factually inaccurate. Even the report of petitioner's state-court mental health expert recounting petitioner's account of the night in question fails to call into question the accuracy of Gonzales' trial testimony.[12]

The new claims and new legal and factual arguments petitioner included in his response to respondent's answer are not properly

---

[12] *See* Dyer Report, at pp. 441-42.

before this Court in this federal habeas corpus proceeding. Moreover, petitioner's arguments do not warrant federal habeas corpus relief in this cause and do not warrant relief under Rule 59(e), Federal Rules of Civil Procedure.

Accordingly, it is hereby **ORDERED** that:

1. All relief requested Petitioner's motion to motion to alter or amend judgment, filed January 19, 2010, docket entry no. 89, is **DENIED**.

2. All relief requested in petitioner's supplement thereto, filed, January 20, 2010, docket entry no. 91, is **DENIED**.

It is so ORDERED.

SIGNED this 25 day of January, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE